1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

9  | MARY B. COSIO,                                    | Case No. 1:13-cv-00631-SMS

10 |              Plaintiff,                           | ORDER AFFIRMING AGENCY'S DENIAL

11 |     v.                                            | OF BENEFITS AND ORDERING JUDGMENT FOR COMMISSIONER

12 | CAROLYN W. COLVIN, Acting Commissioner of Social Security,

13 |              Defendant.

14

15

16      Plaintiff Mary B. Cosio ("Plaintiff"), by attorney Kelsey Mackenzie Brown, seeks review of

17 the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant")

18 denying her application for disability insurance benefits (DIB) under Title II and supplemental

19 security income (SSI) under Title XVI of the Social Security Act. The Court finds the decision of

20 the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a

21 whole and based upon proper legal standards, and affirms.

22 **I.    Procedural History**

23      Plaintiff applied for benefits in October 2009, claiming disability as of that month.[1] The

24 state agency denied her applications initially on February 16, 2010 and on redetermination on

25 September 16, 2010. After a hearing on November 17, 2011, ALJ Michael Blume denied her

26

27 [1] DIB is paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. § 401 *et seq*. SSI is paid
to disabled persons with low income. 42 U.S.C. § 1382 *et seq*. Only DIB is paid retroactively, up to twelve months from
28 the application date. 20 C.F.R. §§ 404.621(a)(1), 416.335. Where the applicable DIB and SSI regulations are virtually
identical, this opinion will identify only one of these.

applications in a decision dated December 20, 2011. The Appeals Council denied review on March 8, 2013. Plaintiff filed her complaint in this Court on May 1, 2013. *See* 42 USC § 405(b)(1). The parties consented to magistrate jurisdiction and have submitted their cross-briefs without oral argument.

**II.    Scope of Review**

Congress has provided a limited scope of review of a decision to deny benefits. First, this Court reviews only the Commissioner's "final decision." 42 U.S.C. § 405(g). Here, because the Appeals Council denied review, that is the ALJ's decision. *Sims v. Apfel*, 530 U.S. 103, 106 (2000); *cf. Brewes v. Comm'r*, 682 F.3d 1157, 1161-62 (9th Cir. 2012) (describing limited consideration of Appeals Council's decision "as a practical matter"). Furthermore, this Court reviews only whether this decision applied proper legal standards and made findings supported by substantial evidence. *Bray v. Comm'r*, 554 F.3d 1219, 1222 (9th Cir. 2009). Substantial evidence is more than a scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. Where the record as a whole can support either grant or denial, the Court may not substitute its judgment. *Id*.

**III.   Disability Standard**

To be disabled, a claimant must have impairments which foreclose all meaningful employment for at least twelve months. 42 U.S.C. § 1382c(a)(3). To make the disability determination more uniform and efficient, ALJs follow a five-step "sequential evaluation process," stopping once they reach a dispositive finding. 20 C.F.R. §§ 404.1520, 1594(b)(5).

The sequential process begins with a "*de minimis* screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.1996). At steps one and two, the claimant must verify that he is not meaningfully employed and in fact has severe impairments. Once the claimant passes this screening, the remaining steps examine whether he is disabled.

The claimant may prove this in two ways. One way—considered at step three—is to have a condition that is disabling by definition. *See* 20 C.F.R. Pt. 4, Subpt. P, App. 1 (the "listings"). Failing this, he must present evidence of his residual functional capacity ("RFC," the most he can do despite his limitations). The ALJ determines this RFC, then at steps four and five applies this to

the world of work. If the claimant's RFC forecloses his past work, and if the Commissioner cannot satisfy her burden to identify a significant number of other jobs that the claimant could learn, then the claimant is disabled.

## IV.   Evidence of Record

Plaintiff applied for benefits in October 2009. AR 155. She claimed disability due to a back injury, stomach aches, and vaginal bleeding, and was unable to walk or stand for more than fifteen minutes or carry objects or move easily. AR 174. In a pain questionnaire dated November 2009, she stated that her pain, including back pain and headaches, started in the early 1980s. AR 180.

On January 17, 2010, James Nowlan, Jr., M.D., performed an internal medicine evaluation of Plaintiff. AR 211-14. Plaintiff said her headaches were "occasionally" shooting pains but were otherwise characterized by "pressure" and were relatively mild. Dr. Nowlan noted that Plaintiff reported activities of daily living including walking, cleaning her house, cooking, and shopping. AR 211. Plaintiff was not taking any medications. AR 211. Based on his examination, Dr. Nowlan opined that Plaintiff could stand/walk for 6 hours in an 8-hour day, lift/carry 10 pounds frequently and 20 pounds occasionally, and noted that Plaintiff was limited by her age and physical deconditioning. AR 213.

On January 18, 2010, Daniel Hightower, M.D., reviewed an x-ray of Plaintiff's lumbosacral spine. AR 210. Dr. Hightower noted that the x-ray showed no evidence for significant degenerative disc disease of the lumbar spine, distal facture, subluxation, or expansile bony change. AR 210. The sacroiliac joints and hips demonstrated only mild degenerative changes, appropriate for Plaintiff's age. AR 210.

On February 12, 2010, State agency medical consultant, F. Kalmar, M.D., reviewed the medical evidence of record. AR 215-20. Based on the medical evidence, Dr. Kalmar opined that Plaintiff could lift/carry 50 pounds occasionally and 25 pounds frequently, stand/walk for 6 hours in an 8-hour day, and sit for 6 hours in an 8-hour day. AR 216. Dr. Kalmar further opined that Plaintiff's only additional limitations would be occasional climbing of ladders, ropes and scaffolds, and should avoid concentrated exposure to extreme cold, vibration, and hazards. AR 218.

On February 16, 2010, the state agency denied Plaintiff's claims initially. AR 99. On April 2, 2010, Plaintiff filed a request for reconsideration. AR 106.

In a function report from June 17, 2010 Plaintiff indicated that she had been fired from a job with Sierra Mini Mart because "they said I took money or shorted my register" (AR 200); the ALJ noted this in his opinion because it contradicted her testimony at the hearing that she stopped working to care for a sick brother in Arizona. AR 23.

On June 23, 2010, Dr. Nowlan performed another internal medicine evaluation. Dr. Nowlan noted that now Plaintiff complained of cervical cancer, poor vision, left hand numbness extending to her face, right knee pain, and poor balance. AR 227. Her pressure headaches were daily. Dr. Nowlan noted Plaintiff's medical records included an x-ray of her lumbosacral spine, which was normal, and his own exam from January, which he stated included only "slight limits." AR 227. Dr. Nowlan noted generally normal findings upon examination. AR 228-30. Dr. Nowlan diagnosed Plaintiff with pain in the right knee, but noted that Plaintiff elicited no findings suggestive of back pain, and had no loss of sensation in her left hand. AR 230. Dr. Nowlan opined that Plaintiff could stand/walk for 6 hours in an 8-hour day, limited only by pain in her right knee, and could sit without limitation and did not require an assistive device. AR 230. Dr. Nowlan further opined that Plaintiff would be able to lift/carry 25 pounds frequently and 50 pounds occasionally, but due to complaints of pain in her right knee, he limited Plaintiff to lift/carry 10 pounds frequently and 20 pounds occasionally. AR 231.

On July 22, 2010, Plaintiff was seen after experiencing numbness in her left hand for several days. AR 237. Sometimes this numbness would radiate to her face. AR 237. The Physician's Assistant diagnosed radiculopathy or carpal tunnel syndrome, but accompanied this by a question mark. AR 237.

On July 27, 2010, T. Divakaran, M.D., reviewed an x-ray of Plaintiff's right knee. AR 232. Dr. Divakaran stated that the x-ray showed periarticular osteopenia, but otherwise normal findings. AR 232.

On August 10, 2010, Roger Izzi, M.D., performed a psychological evaluation. AR 243-47. Dr. Izzi noted that Plaintiff reported her problems as "My left hand quit functioning on me . . . Pain

4

in my knees . . . Pain in back . . . I feel trapped." AR 243. Dr. Izzi noted that Plaintiff reported suicidal ideation without a specific plan, experienced occasional auditory hallucinations, but did not know whether she experienced visual hallucinations. AR 244. He did not observe any auditory or visual hallucinations. AR 244. In his functional assessment, Dr. Izzi noted that pain was a "predominant feature." AR 246. Dr. Izzi opined that Plaintiff did not have problems with basic hygiene, and could perform simple repetitive tasks on a consistent basis over an 8-hour period. AR 246. He diagnosed tension headaches, AR 244, and an unspecified depressive disorder. AR 246. Dr. Izzi opined that Plaintiff's deficit in short-term memory would limit her ability to perform a complex task on a consistent basis, but was psychologically capable of responding to usual work situations regarding attendance and safety issues and changes in a routine work setting. AR 246.

Plaintiff was seen again for her left hand numbness and back pain on August 17, 2010. AR 288. Plaintiff was referred for an EMG. AR 288.

On August 27, 2010, a reviewing physician, L. Kiger, M.D., reviewed the medical evidence in Plaintiff's file. AR 250-52. Dr. Kiger noted that Plaintiff alleged back injury, stomach aches, and vaginal bleeding. AR 250. Dr. Kiger noted that Plaintiff was only marginally credible because she reported worsening symptoms despite minimal findings, and she further noted that Plaintiff alleged memory problems on reconsideration but was not on any psychiatric treatment. AR 251-52. Dr. Kiger opined that Plaintiff's alleged impairments were "non-severe." AR 252.

On September 16, 2010, the state agency denied Plaintiff's request for reconsideration. AR 100. On October 28, 2010, she requested an ALJ hearing. AR 114.

Plaintiff underwent a hysterectomy for possible cancer in May 2011. *See* AR 299-593.

The ALJ hearing occurred on November 17, 2011. Plaintiff testified that the last time she worked was in 2004. AR 64. She had previously worked as a cashier at two different jobs. AR 64-65. Plaintiff testified that her left hand did not work well, was numb all of the time, as well as weak. AR 65. However, doctors had not told her anything about what was happening with her left hand other than that it was not from a stroke. AR 66. Plaintiff stated that she had difficulty even holding up her left hand, and could not lift anything with it. AR 66-67. Plaintiff testified that she had arthritis in her back, for which she was taking vicodin. AR 68. She stated that her back felt like it

would break if she "straighten[ed] up." AR 69. Plaintiff testified that she had problems with her

knees, and experienced shooting pains. AR 70. Plaintiff also testified that she experienced

headaches and stomach pain, and was unable to sit or stand for long periods of time. AR 71.

Plaintiff stated that her back hurt if she tried to lift more than 25 pounds, and she could only walk a

block. AR 71.

### **Testimony of Vocational Expert**

At the hearing, Jo Ann Yoshioka, a vocational expert, described how various mental and

physical limitations would impact Plaintiff's ability to work. *See* 20 C.F.R. §404.1560. First, she

considered whether a person with these limitations and Plaintiff's work experience could return to

that past work. If not, she further considered whether that person, given Plaintiff's age and

education, could adjust to new work. In making this analysis, she characterized Plaintiff's past

work as cashier/checker (light, 3—medium as performed).[2]

The parties asked Ms. Yoshioka to consider two hypothetical sets of limitations. The ALJ's

first hypothetical described a person who could perform medium level lifting and could

occasionally climb scaffolds, ropes, and ladders, with no concentrated exposure to hazards, cold, or

vibration. Ms. Yoshioka stated that the person could perform Plaintiff's past work.

The ALJ's second hypothetical added limitations to lifting 20 pounds occasionally with a

sit-stand option and occasional walking. Ms. Yoshioka stated that the person could perform

Plaintiff's past work at a light level, and that this included the representative category of parking lot

cashiers, of which there were 7,600 positions in Fresno County.

## V.    **The ALJ's Decision**

The ALJ followed the five-step sequential evaluation process outlined above and found

Plaintiff not disabled at step two: Although Plaintiff had a number of impairments which were

"medically determinable"—specifically, "mild degenerative changes of the hips, minimal

pariarticular osteopenia in the right knee, and depressive order not otherwise specified (NOS)"—

none of these was medically severe, either individually or in combination.

---

[2] In the parenthetical, the strength rating captures how much exertion the job requires and whether this is occasional (up to a third of a day), frequent (two thirds), or constant. The Specific Vocational Preparation number ranks, from one to nine, how long it takes to learn the job. Dictionary of Occupational Titles (4th ed.1991) Appendix C.

On appeal, Plaintiff argues that the ALJ erred at step two. She does not identify a specific impairment, but argues generally "that Plaintiff had severe physical and mental impairments that, in combination, had more than a minimal effect on Plaintiff's ability to work," particularly when Plaintiff's obesity was taken into account.

## VI.    Discussion

"[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (citing SSR 85-28). An impairment is severe within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 416.975. Plaintiff argues that this standard is met by evidence that Plaintiff's impairments would impose "some limitations" on Plaintiff's work activities." POB at 7:6-7:7. However, this misstates the standard; an impairment that imposes some limitation on work activities can still be nonsevere, so long as the impact is no more than "minimal" or does not impinge upon "basic" work activities. SSR 96-3p.

Plaintiff's allegations of pain and depression largely rely on her subjective statements and complaints. The ALJ found that "most of the [consultative examiner] conclusions depend on her subjective representations, many of which are either untrue or contradictory to the point of being utterly unreliable." AR 28. He found her to be "not credible," and it is significant that Plaintiff does not challenge the ALJ's adverse credibility finding. In finding Plaintiff not credible, the ALJ appropriately considered, among other factors, that Plaintiff made multiple inconsistent allegations about her alleged impairments. In January 2010, Plaintiff did not report numbness in her left hand, and she had full motor strength in all her extremities. AR 211-13. However, in June 2010 she reported that the numbness extended from her left hand to her face, claiming it began in 2008. AR 227-28. In August 2010, Plaintiff claimed that her "left hand quit functioning." AR 243. Then, in May 2011, Plaintiff alleged numbness only in her left thumb and index finger. AR 25, 361, 404.

Objective medical evidence also contradicted Plaintiff's subjective complaints and supported the ALJ's finding that Plaintiff did not have a severe impairment. AR 22, 24-28. Plaintiff alleged that she experienced back pain through the date of the hearing. AR 24, 68-69. However, the

mild objective findings of record contradicted Plaintiff's allegations. As the ALJ noted, an x-ray of Plaintiff's lumbosacral spine from January 2010 showed "no evidence" of significant abnormalities. AR 24, 210. The objective medical evidence showed only "mild degenerative changes, appropriate for age." AR 210. As to Plaintiff's alleged knee pain, an xray from July 2010 showed periarticular osteopenia, but otherwise normal findings. AR 232. In August 2010, a reviewing physician, L. Kiger, M.D., reviewed all the evidence in Plaintiff's file. AR 250-52. Based on his review, Dr. Kiger noted that Plaintiff reported worsening symptoms despite minimal findings, concluding that Plaintiff's alleged impairments were "nonsevere." AR 252.

Plaintiff also argues that the ALJ failed to consider the impact of her obesity. In discussing the state agency physician Dr. Kalmar's opinion, the ALJ acknowledged Plaintiff's "obesity" as an objective finding. AR 26. In fact, the word Dr. Kalmar had used was "overweight." The numbers that both Dr. Kalmar and Dr. Kiger relied upon were that Plaintiff was five feet tall and 142 pounds, which in fact corresponds to a BMI of less than 28 ("overweight"). Plaintiff claims that the ALJ failed to account for her obesity, but she identifies no relevant evidence either in medical records or in expert opinions, and this Court can identify none.

In alleging error with the ALJ's step two finding, Plaintiff relies on the reports from Drs. Nowlan and Izzi. POB at 7:7-7:9, 8:12-8:15. However, these reports failed to support Plaintiff's allegation of severe impairment. As the ALJ correctly noted, Dr. Nowlan examined Plaintiff in January and June 2010. AR 26, 211-14, 227-31. In the January examination, Plaintiff reported vaginal bleeding, low back pain, and headaches. AR 211. Despite her alleged symptoms, Plaintiff reported that she walked, cleaned her house, cooked and shopped, and did not take any medications. AR 211. The physical examination showed essentially normal findings. AR 211-13. Based on Plaintiff's subjective complaints, and notwithstanding the lack of significant examination findings, Dr. Nowlan diagnosed tension headaches and "[b]ack pain with no objective evidence." AR 213. The following month a State agency medical consultant, Dr. Kalmar, questioned Dr. Nowlan's findings, noting that there was no objective evidence of impairment as the examination was essentially normal. AR 219. Based on Dr. Kalmar's review of the evidence, he opined that

Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently, stand for 6 hours and sit for 6 hours in an 8-hour day, and would have minimal postural limitations. AR 215-18.

In his June 2010 examination, Dr. Nowlan noted that now Plaintiff complained of cervical cancer, poor vision, left hand numbness extending to her face, right knee pain, and poor balance. AR 227. Dr. Nowlan noted that he reviewed Plaintiff's records, including an x-ray of her lumbosacral spine, which was normal, and his own exam from January, which he stated included only "slight limits." AR 227. The examination findings were again normal, except for Plaintiff's complaints of pain in her right knee. AR 228-30. As the ALJ noted, Dr. Nowlan's functional assessment remained essentially unchanged, but this time based his limitations on Plaintiff's alleged knee pain instead of alleged back pain. AR 26, 231.

Dr. Izzi examined Plaintiff in August 2010. AR 243-47. The ALJ assigned "great weight" to Dr. Izzi's opinion. AR 27. As the ALJ correctly noted, based on his examination, Dr. Izzi opined that Plaintiff's intellectual functioning was in the borderline to low average range, she had deficits in short-term visual and auditory memory, but had good perceptual motor integration functioning. AR 27, 245-46. Dr. Izzi's only diagnosis was depressive disorder. AR 246. Dr. Kiger, to whose opinion the ALJ assigned "great weight," questioned Plaintiff's credibility in this regard, noting that she lacked a history of treatment or of complaints of depression. AR 27, 252.

As Plaintiff failed to meet burden at step two, and substantial evidence supports the ALJ's step two finding, the Court affirms the decision.

**VII.    Conclusion**

The ALJ applied appropriate legal standards and substantial credible evidence supported the ALJ's determination that Plaintiff was not disabled. Accordingly, the Court hereby AFFIRMS the agency's denial of benefits. The Clerk of Court is directed to enter judgment for Defendant Carolyn W. Colvin, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   __February 27, 2014__             _____/s/ Sandra M. Snyder_____
                                                          UNITED STATES MAGISTRATE JUDGE

9